```
 1 │ KAREN P. HEWITT
   │ United States Attorney
 2 │ STEVE MILLER
   │ Assistant U.S. Attorney
 3 │ California State Bar No. 138020
   │ Federal Office Building
 4 │ 880 Front Street, Room 6293
   │ San Diego, California  92101-8893
 5 │ Telephone: (619) 557-5432
   │ Email: steve.miller2@usdoj.gov
 6 │
   │ Attorneys for Plaintiff
 7 │ United States of America
 8 │
   │                    UNITED STATES DISTRICT COURT
 9 │
   │                   SOUTHERN DISTRICT OF CALIFORNIA
10 │
   │ UNITED STATES OF AMERICA,        )   Criminal Case No. 08cr0682-JLS
11 │                                  )
   │              Plaintiff,          )   DATE:    April 18, 2008
12 │                                  )   TIME:    2:00 p.m.
   │      v.                          )
13 │                                  )   GOVERNMENT'S RESPONSE AND
   │ MARISELA CASTRO-JUAREZ (1),      )   OPPOSITION TO DEFENDANTS'
14 │ MARISA MELENA MAFNAS (2),        )   MOTIONS TO:
   │ DAVID MONTES (3),                )
15 │ JULIE HERNANDEZ (4),             )   (1)  COMPEL DISCOVERY; AND
   │ RANDAL MARK PANTER (5),          )   (2)  LEAVE TO FILE FURTHER MOTIONS
16 │ LORENZO PECORARO (6),            )
   │ JOSE PARADA-VELAZQUEZ (7),       )   TOGETHER WITH STATEMENT OF FACTS
17 │ JOHN WALTER SCHUH (8),           )   AND MEMORANDUM OF POINTS AND
   │                                  )   AUTHORITIES AND GOVERNMENT'S
18 │              Defendants.         )   MOTION FOR RECIPROCAL DISCOVERY
   │                                  )
19 │ _____)
```

20    COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through

21  its counsel, Karen P. Hewitt, United States Attorney, and Steve

22  Miller, Assistant United States Attorney, and hereby files its

23  response and opposition to defendants' above-referenced motions. Said

24  response is based upon the files and records of this case, together

25  with the attached statement of facts, memorandum of points and

26  authorities and Government's motion for reciprocal discovery.

27

28

I

STATEMENT OF FACTS

A. Alien Smuggling

In 2004, agents from ICE and CBP opened up an investigation titled "Operation Blackjack" once they began to notice a series of alien loads with a unique compartment where the alien's upper torso was concealed in the passenger seat dash board with the legs extended under the passenger seat while covered with a blanket. When ICE and CBP looked further into the organization, they found a long term commercial alien smuggling operation run by MARISELA CASTRO-JUAREZ. In addition to the individual alien smuggling loads, the agents also discovered that CASTRO bought a $600,000 house with her alien smuggling proceeds. The following is a chronology of the events related to the CASTRO smuggling organization.

On October 24, 2001, CASTRO drove a Saturn station wagon to the San Ysidro POE with a minor riding as a passenger. The car was registered to CASTRO and one alien was concealed in a dashboard compartment. CASTRO waived her Miranda rights and admitted she was transporting the alien, but denied that anyone was paying her.

On June 13, 2002, SCHUH drove a Dodge mini van at the sewer plant 9 miles east of the Tecate POE with 8 aliens in the back. He waived his Miranda rights and admitted he was hired to transport the aliens for $100 per alien. MAFNAS was the registered owner of this van.

On March 20, 2002, agents apprehended CASTRO on Highway 94 in a Volkswagen Jetta guiding another vehicle containing 4 aliens. The other vehicle, driven by Jeri Stephenson, was stopped and Stephenson told agents that she was working for the woman in the Jetta. CASTRO called Stephenson and told her to "just drive east." Agents

apprehended CASTRO as she rode in a car driving back westbound on Highway 94. During a Mirandized interview, CASTRO admitted making the arrangements for the alien smuggling venture. She stated that she planned to pay Stephenson $700 for transporting the aliens.

On December 24, 2003, at 4:33 a.m. Suzy Smith drove a Kia Sephia to the San Ysidro POE. Three aliens were concealed in the trunk. CASTRO was identified as the person who made all of the arrangements to smuggle aliens and provided the home number of (619) 934-4336 and the cell number of (619) 863-8549.

On January 9, 2004, PECORARO was a passenger in a Ford Probe driven by Mark Donaldson to the Otay Mesa POE with 1 alien concealed in a modified dashboard compartment.

On March 25, 2004, SCHUH drove a Dodge Avenger to the San Ysidro POE with 3 aliens in the trunk.

On May 7, 2004, PECORARO drove a BMW 325 to the San Ysidro POE with Antolin Elias as a passenger. Three aliens were concealed in the trunk. PECORARO waived his <u>Miranda</u> rights and stated that he was hired by a woman named "Olivia" to smuggle the aliens for $1000.

On November 30, 2004, agents observed CASTRO driving a blue Volvo north on I-5 through the San Ysidro POE. CASTRO picked up her cousin, Juan Apolinar Juarez, drove to a Burger King at the intersection of Diary Mart Road and West San Ysidro Blvd., and dropped Apolinar off. Apolinar walked to the parking lot of a nearby hotel and got in the front passenger seat of a white Pontiac driven by Antolin Elias. Agents stopped the car and found three aliens in the back seat. Apolinar waived his <u>Miranda</u> rights and told agents that CASTRO instructed him to pay Elias $1000 ($2470 found on his person) to

transport the aliens north. Elias waived his Miranda rights and told agents that Apolinar hired him to drive the aliens across the POE.

On September 14, 2005, MAFNAS drove a Mazda MX-6 to the San Ysidro POE with Viane Huerta-Navarro riding as a passenger. Huerta-Navarro was a documented alien, but falsely claimed U.S. citizenship. After they were referred to secondary, the inspectors discovered an alien concealed in the dashboard. Mafnas admitted knowledge of the alien and that she was being paid $250 to smuggle the alien into the U.S.

On September 16, 2005, Yesenia Garcia Reyna drove a Volkswagen Beetle to the San Ysidro POE with 3 alien imposters in the passenger compartment.

On October 3, 2005, Yesenia Garcia Reyna drove a Hyundai Elantra to the San Ysidro POE with 1 alien imposter in the passenger compartment.

On October 5, 2005, Yesenia Garcia Reyna drove a Hyundai 300CD to the Otay Mesa POE with 1 alien imposter in the passenger compartment.

On November 6, 2005, at approximately 5:10 p.m., SCHUH drove a Chevy Impala to the San Ysidro POE with 4 aliens in the trunk.

On November 6, 2005, shortly before midnight, HERNANDEZ rode as a passenger in a Geo Metro driven by David Singleterry, to the San Ysidro POE with 1 alien in the dashboard. HERNANDEZ waived her Miranda rights and admitted knowledge of the aliens but said that she was doing it because she felt sorry for the alien.

On November 12, 2005, HERNANDEZ drove a Chevrolet Geo Metro to the Otay Mesa POE with Keith Elliot as a passenger. One alien was concealed in the dashboard.

On November 22, 2005, Yesenia Garcia Reyna drove a Ford Escort to the San Ysidro POE with 1 alien imposter in the passenger compartment.

On December 13, 2005, HERNANDEZ drove a Mitsubishi Galant to the San Ysidro POE with David Singleterry and Beatrice Gonzalez as passengers. One alien was concealed in the dashboard compartment. HERNANDEZ waived her Miranda rights and admitted knowledge of the aliens and to smuggling for financial gain.

On January 5, 2006, Amber Varao rode as a passenger in a Ford Aspire driven by Reynalda Gonzalez to the San Ysidro POE. One undocumented alien was concealed under the front seats.

On January 10, 2006, Wesley Hardesty drove a Geo Storm with Varao riding as a passenger to the San Ysidro POE. The undocumented alien had a false document and attempted to enter the United States as an imposter.

On January 17, 2006, Hardesty drove a Chevrolet Cavalier to the San Ysidro POE with Sean Turner riding as a passenger. The undocumented alien was concealed in the side floorboard of the car.

On January 24, 2006, Hardesty rode as a passenger in a Hyundai Elantra driven by Arnulfo Ricardo Rodriguez next to the border fence in Tecate. Border Patrol Agents saw a person running back into Mexico near where the Elantra was driving slowly. The Agent left the area and continued his observations through the surveillance cameras. The car left a parking area and drove back to the fence area. The agent stopped the car and found 2 aliens in the back seat. The Elantra was registered to PARADA-VELAZQUEZ at CASTRO's address at 1514 Amador Street in Chula Vista, California.

On January 31, 2006, Yesenia Garcia-Reyna drove a Daewoo Lanos to the San Ysidro POE with Lizbeth Flores riding as a passenger and 1 alien concealed in a modified dashboard compartment.

On February 1, 2006, Hardesty drove a Pontiac Grand Am to the San Ysidro POE with Adreina Rios as a passenger and three undocumented aliens concealed in the trunk.

On March 6, 2006, CASTRO rented a Dodge Caravan that was later caught on March 21. Agents observed and photographed this van in front of CASTRO's house.

On March 12, 2006, Border Patrol agents were following footprints a quarter mile east of the Tecate POE. While they were still following the footprints, the agents heard people yelling and climbing into a Jeep Liberty driven by SCHUH near the intersection of Thing Road and Humphries Road. Six aliens were in the Jeep. In the field, SCHUH told the agents that the people just started to climb into his car without permission. After he waived his <u>Miranda</u> rights, SCHUH told the agents he was hired to pick up the aliens because he needed the money. He was to be paid $150 per alien and admitted that he had smuggled aliens in the Campo area four times before.

On March 21, 2006, PECORARO drove the Dodge Caravan CASTRO had rented near Tecate with 5 undocumented aliens in the back of the van.

On or about March 28, 2006, Ricardo Reyes picked up the two undocumented aliens at the McDonald's Restaurant, took them to his residence at 5505 Winchester Street in San Diego, and contacted the aliens' sponsors. The sponsors were to meet Reyes to pick up the aliens the following day at the Denny's Restaurant in San Clemente, California.

On March 29, 2006, at approximately 10:30 a.m., during surveillance, agents saw Reyes and Joshua Roman exit the residence at 5505 Winchester Street and began moving items in and out of a Ford Explorer and a silver Infiniti J30. At approximately 11:10 a.m., Reyes and Thania Ayala drove away from the residence in the Explorer, and Roman and the two aliens drove away from the residence in the silver Infiniti. Reyes drove in tandem with the load vehicle driven by Roman. Reyes drove through the San Clemente checkpoint to see if it was clear and Roman was stopped with the aliens near the rest stop. Both were stopped and later prosecuted.

Later in the evening of March 29, Hardesty drove a Ford Aspire to the Interstate 8 checkpoint near Pine Valley. The Border Patrol Agents discovered an undocumented alien lying on the floorboard in the rear of the car.

On April 13, 2006, PANTER drove an Infiniti G20T with Beverly Norris as a passenger to the San Ysidro POE with 3 aliens in the trunk.

On June 16, 2006, Yesenia Garcia Reyna drove a Chrysler PT Cruiser to the I-94 checkpoint with 2 aliens in the trunk and 1 alien under a blanket.

On July 16, 2006, PANTER drove a Dodge Neon with Hardesty as a passenger to the Highway 80 checkpoint. The Border Patrol discovered 3 aliens; 2 in the trunk and 1 in the rear seat under a large sign. PANTER waived his <u>Miranda</u> rights and admitted that he had been arrested numerous times for alien smuggling and that he was contacted to pick up the group of aliens near Potrero. He admitted he smuggles to make money because he can't find a job. PANTER had CASTRO's phone number in his contacts listed under "Amy." Pen Register analysis

shows CASTRO attempting to contact Hardesty on his cell phone four times in the hour after his apprehension (while he was in custody), and cell site information showed her to be in the vicinity of Viejas Casino.

On August 2, 2006, agents conducted surveillance on PANTER. PANTER left his home and met CASTRO in his parking lot. PANTER then went to Kragen Auto Parts, purchased some "spacers," which he installed on a rented Chrysler 300. PANTER then left his apartment and drove the car to an area just north of the border. The agents lost sight of them but they were later apprehended by Border Patrol agents at the Highway 80 checkpoint. There were 3 aliens in the trunk.

On August 10, 2006, Yesenia Garcia Reyna drove a Ford Escort to the I-94 checkpoint with Lizabeth Flores-Gallegos as a passenger and 2 alien imposters in the back seat.

On August 14, 2006, PANTER drove a Nissan Altima along Highway 80 and pulled out in front of a Border Patrol Agent. The car appeared to ride low. As the agent followed, PANTER pulled onto Highway 94 and stopped at a convenience store at the intersection of Buckman Springs. The agent contacted PANTER and asked him where he was coming from and PANTER said Chula Vista. When asked to whom the car belonged, PANTER said it was his ex-wife's. The agent asked if he could look in the trunk and PANTER said yes. The agent found 3 aliens in the trunk. CASTRO had been previously observed driving this car.

The day after this apprehension, CASTRO made a telephone call to a person in a Texas prison. On the recorded jail tape, CASTRO told him that she "lost a lot of money yesterday" and that it "went badly for her" because she lost her car.

On September 24, 2006, Hardesty drove a Dodge Stratus to the I-8 checkpoint with 2 aliens in the trunk. Pen register analysis shows that Hardesty called CASTRO the night before the apprehension, and CASTRO called Hardesty on the morning of the apprehension.

On October 25, 2006, MONTES drove a Honda Accord to the I-8 checkpoint with 2 aliens concealed in the trunk. The Honda that MONTES drove was observed at CASTRO's residence two days earlier.

On January 25, 2007, Hardesty drove a Toyota Camry to the I-94 checkpoint with 2 aliens in the trunk. Pen register analysis shows that Hardesty called CASTRO the night before the apprehension, and CASTRO called Hardesty on the morning of the apprehension.

On February 15, 2007, agents conducted surveillance on PANTER and observed him driving with CASTRO in a Toyota Sienna that she had rented. PANTER and CASTRO drove to a parking lot where they met PARADA. PARADA was in the driver's seat of a Honda Accord that had been rented by Jesse Sanchez. PARADA got out of the Honda, handed the keys to PANTER, and the three had a short discussion. PARADA and CASTRO then left in the Sienna, and PANTER left in the Honda. Later that day, PANTER drove the Honda to the Highway 94 checkpoint. At the checkpoint, PANTER told the agents that the car was his. The agent asked permission to look in the trunk and PANTER said yes. The agent discovered 3 aliens in the trunk. PANTER waived his _Miranda_ rights and admitted knowledge of the aliens and stated that he was being paid $300 per alien. PANTER stated that he was working for a man named Jose. PANTER also had CASTRO's phone number in his contacts.

On or about March 9, 2007, CASTRO was a passenger in a Chrysler Sebring driven by MONTES on East Palomar Street in Chula Vista. The car was rented by CASTRO.

On March 10, 2007, MONTES drove the Sebring to the I-8 checkpoint. Two aliens were seated in the passenger compartment. The car was referred to secondary inspection because the passengers had no identification. When the agents determined the 2 passengers were aliens, they interviewed MONTES. He waived his Miranda rights and told the agents that he knew Perez who called him to come and pick up Perez and another person at the AmeriMex gas station in Tecate. MONTES was to drive them to a McDonalds in Del Mar. MONTES said that the car belonged to his aunt, and then recanted and said it belonged to a friend named "Marcela."

On August 1, 2007, SCHUH drove a Chevrolet Malibu to the I-8 checkpoint with 2 aliens in the trunk.

On January 25, 2008, MAFNAS drove a Honda Accord to the I-8 checkpoint with 2 aliens in the trunk. MAFNAS was indicted in case 08cr0306-JLS; this case was later related to the present indictment.

B.   Money Laundering

On May 25, 2004, CASTRO purchased her house at 1514 Amador Street in Chula Vista for $600,000. Five days earlier, on May 19, she cashed in a CD at her bank (Bank of America) for $100,279.88. She used this money, along with another $30,000 in cash, to put a down payment on the house totaling approximately $133,000.

Her monthly PITI (mortgage) payments in 2006 were approximately $2300, typically paid via check or automatic transfer from her primary account.

For the home loan, CASTRO filled out two Uniform Residential Loan Applications containing the same information. The September 6, 2003, application was handwritten and signed by CASTRO. The May 19, 2004, application was type written and also signed by CASTRO. On both

applications, she falsely claimed employment with a bookkeeping company and put the phone number of a load driver as the point of contact to confirm employment. The bookkeeping company denied that CASTRO ever worked there and said that the person stated as the point of contact had not worked there for 2 years. CASTRO also claimed that she had a monthly income of $9000.

There were numerous cash deposits in CASTRO's primary account from which her house payments were made:

```
     2001 $ 20,612.31
     2002 $141,917.90
     2003 $137,772.01
     2004 $ 76,671.99
     2005 $153,234.91
     2006 $ 68,566.22
Total     $598,775.34
```

Among those cash deposits since March of 2003, there were a number of $9,000 plus deposits showing systematic structuring.

Cooperating defendants have testified before the Grand Jury that they have paid the aliens' smuggling fees directly to CASTRO. None of the cooperating defendants indicated that CASTRO ever had legitimate employment or seen her working.

II

POINTS AND AUTHORITIES

A.  THE GOVERNMENT HAS AND WILL CONTINUE TO COMPLY WITH
    RULE 16 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

The Government will provide voluntary discovery as well as a video disk of individual defendant statements to the agents. The Government will continue to provide voluntary discovery when it becomes available and will comply with Rule 16 and its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and 18 U.S.C. § 3500.

The Government gives specific notice of its intent to offer evidence of other acts under Rule 404(b). By this notice, the

Government reserves the right to offer any evidence, of any act, that was performed by the defendants, that is referenced in any of the discovery. The acts also include any prior alien smuggling event that is not charged in the indictment, any telephone call, rental of vehicles or financial transaction that are reflected in the discovery. The evidence includes but is not limited to events that only become relevant once defendants' theory of the case is revealed.

B.  ANY LEAVE FOR DEFENDANTS' TO FILE FURTHER MOTIONS SHOULD BE STRICTLY LIMITED

While the Government recognizes this court's discretion to permit the defendants to file further motions, the Government does oppose defendants' motion to the extent it is conjectural, overly broad and invites abuse. Any need for further motions should be justified at the time they are filed, permitting both the Government to oppose on a motion-by-motion basis and this court to determine if such motions could in fact have been filed earlier. Any other course would invite an interminable and protracted motion practice, resulting in delay of trial.

C.  THE GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY SHOULD BE GRANTED

1.  Rule 16(b)

The defendant has invoked Federal Rule of Criminal Procedure 16(a) in his motion for discovery. In addition, the Government voluntarily will comply with the requirements of Federal Rule of Criminal Procedure 16(a). Thus, the 16(b) provision of that rule are operable as to defendant.

The Government, pursuant to Rule 16(b), hereby requests the defendant to permit the Government to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects,

or make copies of portions thereof, which are within the possession, custody or control of defendant and which he intends to introduce as evidence in his case in chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of the defendant, which he intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call as a witness. The Government also requests that the Court make such orders as it deems necessary under Rule 16(d)(1) and (2) to ensure that the Government receives the discovery to which it is entitled.

### 2. Rule 26.2

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses except the defendant. The Rule thus provides for the reciprocal production of Jencks statements. As stated in pertinent part:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney . . . to produce, for the examination and use of the moving party, any statement of the witness that is in their possession . . . .

Fed. R. Crim. P. 26.2(a).

The time frame established by the Rule requires the statement to be provided after the witness has testified, as in the Jencks Act. Therefore, the Government hereby requests that defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the court. This order should include

any form these statements are memorialized in including, but not limited to, tape recordings, handwritten or typed notes and reports.

### III

### CONCLUSION

For the foregoing reasons, the Government respectfully requests that defendant's motions be denied and the Government motions be granted.

DATED: April 11, 2008.

                                        Respectfully submitted,

                                        KAREN P. HEWITT
United States Attorney

s/Steve Miller
STEVE MILLER
Assistant U.S. Attorney
Attorneys for Plaintiff
United States of America
Email: steve.miller2@usdoj.gov

|   |   |   |
|---|---|---|
| 1 | | UNITED STATES DISTRICT COURT |
| 2 | | SOUTHERN DISTRICT OF CALIFORNIA |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0682JLS |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CERTIFICATE OF SERVICE |
| MARISELA CASTRO-JUAREZ (1), MARISA MELENA MAFNAS (2), DAVID MONTES (3), JULIE HERNANDEZ (4), RANDAL MARK PANTER (5), LORENZO PECORARO (6), JOSE PARADA-VELAZQUEZ (7), JOHN WALTER SCHUH (8), | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

IT IS HEREBY CERTIFIED THAT:

     I, STEVE MILLER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

     I am not a party to the above-entitled action. I have caused service of Government's Response and Opposition to Defendants' Motions on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Merle Schneidewind, Esq.
   Email: atymere@pacbell.net

2. Charles Adair, Esq.
   Email: adair.c@sbcglobal.net

3. Inge Brauer, Esq.
   Email: ibesq@yahoo.com

4. Brian Funk, Esq.
   Email: bfunkesq@cs.com

5. Elmer Cox II, Esq.
   Email: joecoxii@cox.net

6. Stephen White, Esq.
   Email: spw1@sbcglobal.net

7. Gerald McFadden, Esq.
   Email: gtmcfadden@hotmail.com

8. Richard Boesen, Esq.
   Email: richieb00@yahoo.com

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 11, 2008.

                                        s/Steve Miller
                                        STEVE MILLER